# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA PETRANCOSTA, *et. al.*, | : | |
| | : | |
| Plaintiffs | : | Case No. 3:12 – CV – 00677 |
| | : | |
| v. | : | (Judge Brann) |
| | : | (Magistrate Judge Arbuckle) |
| | : | |
| | : | |
| JAVID I. MALIK, *et al.*, | : | |
| | : | |
| Defendants | : | |

## ORDER RESOLVING DISCOVERY DISPUTE

## PROCEDURAL BACKGROUND

On April 22, 2013, this case was referred to a Magistrate Judge for the resolution of a discovery dispute. (Docs. 43, 44). On May 9, 2013, a telephonic discovery conference was held to assist the Court in understanding the issues presented by Defendant Malik's Letter to the Court (Doc. 41), and Plaintiffs' response (Doc. 42). Present on the call were Attorneys Altemose and Blanko for the Plaintiffs, Attorney Doherty for Defendant Malik, Attorney Blum for Defendant Roesler, and Attorney Hadley for Defendants Forde, Waters, Gomez, King, Hunter, Chaffardet, Pocono Medical Center, Pocono Health System, and Sakgadim.

On May 22, 2013 Counsel for Dr. Malik filed supplemental correspondence (Doc. 52) with additional legal authorities. The mater is ripe for decision.

**FACTUAL BACKGROUND**

The Plaintiff, Linda Petrancosta, was involved in a motor vehicle accident and taken to Pocono Medical Center where she received treatment including a CT scan. Plaintiff contends that she suffered non-displaced fractures to her C6 cervical vertebrae and facet joint of the C6 vertebrae during the accident and that her CT scan clearly shows those fractures. Dr. Javid Malik, a radiologist, reviewed films of the CT scan and prepared a report in April, 2010. Dr. Malik identified certain abnormalities but no fractures. Plaintiff alleges that Dr. Malik's failure to identify the fractures resulted in her misdiagnosis. She claims the delay in a proper diagnosis (and therefore proper treatment) allowed the fractures to become unstable, damaging plaintiff's spinal cord. This delayed damage, she claims, required extensive surgery and caused severe permanent neurologic injury.

The instant dispute arises from objections made during the deposition of Dr. Malik. During Malik's deposition he confirmed the conclusions set forth in his April 2010 report. He also testified that the films contain a "technical artifact"[1] at the location where plaintiff claims she suffered a fracture. The observation of the technical artifact was not in his original report. The plaintiff says she intended to review each of the films with the doctor and ask him to identify and mark each abnormality and the technical artifact. Plaintiff also intended to direct the Dr. to

---

[1] A technical artifact is a streak on the film caused by the CT scanner.

the areas she contends contain the fractures and ask him if he observed any abnormalities, and if so what conclusions he reached about those abnormalities.

Finally, Plaintiff's counsel intended to ask Dr. Malik whether he now believes, as a result of his review of the CT Scan or other information in preparation for his deposition, that the CT Scan films do contain evidence of fractures of the cervical vertebrae (including equivocal evidence) and if so, why he did not observe or note the evidence in his April 2010 report.

At this point in the deposition Dr. Malik's counsel objected and instructed his client not to answer any questions about his present day analysis of the April 2010 films.

Plaintiff is seeking an order requiring Dr. Malik to answer the contested questions and seeks sanctions in the form of costs for the second deposition. Dr. Malik contends that to answer the objectionable questions would require him to provide "expert testimony" in violation of F.R.E. 701 & 702. If he is not an "expert" he argues, then his present day interpretation of what was done in 2010 is not relevant. Dr. Malik has stipulated that the he will not personally provide any expert testimony at the time of trial. During the discovery conference call in May, Dr. Malik's counsel agreed that his objection was not based on the technical procedures or computer programs used by plaintiff to have the witness mark and identify abnormalities on the films; the objection was that he was being asked at

all. The Court is asked to sort out what questions a physician defendant can properly be asked in a deposition in these circumstances.

**LEGAL ANALYSIS**

Several basic guiding principles inform our resolution of the instant discovery dispute.

The scope of what is discoverable is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)( C ).

Depositions in Federal Court are governed by F.R.C.P. 30. Objections during the deposition are governed by F.R.C.P. 30 (c)(2) which stated in relevant part:

> Rule 30. Depositions by Oral Examination …
> (c) Examination and Cross-Examination; Record of the Examination; Objections; Written Questions. …
> (2) *Objections*. **An objection at the time of the examination**-- whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition--**must be noted on the record, <u>but the</u>**

> ***examination still proceeds; the testimony is taken subject to any objection.*** An objection must be stated concisely in a nonargumentative and nonsuggestive manner. ***A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).***
> …
>
> F.R.C.P. 30<em>, emphasis added</em>.

Thus it appears that the initial question to be resolved is whether or not the objection was timely and the instruction not to answer was proper. Counsel for Dr. Malik argues that he does not "understand (plaintiff's) Counsel's representation (to the court) that she "intended" on posing a specific line of questions since these questions were never raised in the deposition." (Doc. 42, page 2). Although not provided a copy of the deposition transcript, it is clear to the court from the arguments of counsel that Dr. Malik's counsel instructed him not to answer any questions regarding his present day interpretations of the films. Plaintiff's counsel was not required at that point to list every question and have the doctor refuse to answer each one. The issue was properly joined at that point and the court must now resolve whether or not the proposed line of questioning is permissible under applicable law.

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding the scope of permissible discovery is committed to the sound discretion of the district court.

*Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. *See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.,* 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." *Saldi v. Paul Revere Life Ins. Co.,* 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing *Scott Paper Co. v. United States,* 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." *Kresefky v. Panasonic Commc'ns and Sys. Co.,* 169 F.R.D. 54, 64 (D.N.J.1996); see also *Hasbrouck v. BankAmerica Hous. Servs.,* 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); *EEOC v. Mr. Gold, Inc.,* 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).
>    *Halsey v. Pfeiffer*, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any

party's claim or defense." Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." F.R.P.C. 26(b)(1).

Doctor Malik argues that when viewing films today he does so with knowledge of what happened in the intervening years (Doc. 52, page 5). If he is not to be an expert, then his opinion is not relevant. Reduced to its simplest terms, Malik argues that he is permitted to stay in a state of perpetual ignorance and not use his own 20-20 hindsight against himself. The rationale of Judge Richard Gray of Lycoming County in Meyers v. Carey et. al., (unpublished opinion, Doc. 52, Appendix A) supports that view and is relied upon by this court. However, explaining what he saw and where it appears in his report, or conversely being shown an area on the film and being asked if it is in his report is not his current opinion. Explanation of his report is not off limits. Providing a current opinion is. It is improper to ask him to mark the film, using his current knowledge, and explain what he sees. It would not be improper to draw his attention to a particular spot on the films and ask if that area is discussed in his report. The next obvious question: "Why not?" is also permissible. Since he apparently identified "technical

artifacts" during his deposition it would also be appropriate to ask if they are mention in his report, and if not, why not.  Did he see them and not include them in his report, did he miss them, or were they not there in 2010 when he examined the films?  If plaintiff's counsel has particular areas of concern based on what their expert sees on the films, asking Dr. Malik if he saw that concern in 2010 and if it is in his report are proper questions.  Asking him if he sees that concern today, while undoubtedly of interest to the Plaintiff, is not something he is required to answer unless he is an "expert witness."  By refusing to answer questions about what he sees today, which under the rationale of the *Meyers* case is permissible, he probably precludes testifying about those concerns at trial.  However, admissibility at trial is not before the court now, only the proper scope of deposition questions.

**CONCLUSION**

For these reasons the Court concludes that Dr. Malik can be deposed a second time and shown the films.  He can be shown specific items in the films and asked if they are in his report, and if not, why not.   While he may do so, he is not required to answer if he now has a different opinion based on matters he has learned since his initial report.

The objections during the deposition were made in good faith.  The request for costs is denied.

If the court's delay in resolving this issue has hurt the parties ability to get this case ready for trial with the current deadlines the parties are invited to submit an agreed revised schedule for the Court's approval.

**SO ORDERED.**

<u>**s/ William I. Arbuckle, III**</u>
William I. Arbuckle, III
U.S. Magistrate Judge

Dated: September 5, 2013