## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LINDA PETRANCOSTA**, *et. al.*, | : | |
| | : | |
| **Plaintiffs** | : | **Case No.  3:12 – CV – 00677** |
| | : | |
| **v.** | : | **(Judge Brann)** |
| | : | **(Magistrate Judge Arbuckle)** |
| | : | |
| | : | |
| **JAVID I. MALIK,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM AND ORDER ON MALIK DEPOSITION DISPUTE
### (Docs. 41, 42, 52, 58, 66, & 71)

## I.     BACKGROUND

### A. Facts

On April 19, 2010, Plaintiff, Linda Petrancosta, was involved in a rollover

auto crash.  She was transported by ambulance to the Pocono Medical Center.  The

emergency room physician ordered numerous diagnostic studies, including X-rays

and a CT Scan of the cervical spine.  Defendant, Javed Malik, M.D. ("Dr. Malik"),

reviewed and interpreted the films from these studies. Dr. Malik then issued

reports describing his findings.

Dr. Malik concluded that the CT Scans showed degenerative changes of the

spine with narrowing of the disc spaces at C5-6, C6-7 and C7-T11 with moderate

endplate osteophyte formation and a mucous retention cyst in the left maxillary

sinus.  He further concluded that the films did not reveal any fracture or subluxation (Doc. 66, p.2).   Plaintiff was later treated with physical therapy and suffered a spinal cord injury requiring surgery.

Plaintiff contends that Dr. Malik misread the films.  She claims the films revealed a fracture of the C6 vertebrae and a fracture of the C6 facet joint, fractures Dr. Malik should have observed.  Plaintiff further argues that when Dr. Malik read the films the fractures were visible, but aligned and stable.  If properly diagnosed, Plaintiff claims she would have been placed in a hard collar and the fractures would have healed without the need for surgery and without the complication of spinal cord injury.

### B. Procedural History

The malpractice complaint was filed on April 11, 2012 (Doc. 1) against a number of entities and physicians, including Radiologist Javed Malik.  Dr. Malik's video deposition was held on April 4, 2013.  A letter advising the court of a discovery dispute during the deposition was filed by the Plaintiff on April 13, 2013 (Doc. 41).  A responsive letter was filed by Dr. Malik on April 15, 2013 (Doc. 42). The dispute was referred to the undersigned on April 22, 2013 (Doc. 44).  A telephonic discovery conference was held on May 9, 2013 (Minute sheet, Doc. 49; Transcript of conference, Doc. 50).  A follow up letter brief was filed by Dr. Malik on May 22, 2013 (Doc. 52).

The undersigned filed a Memorandum and Order ostensibly resolving the dispute on September 5, 2013 (Doc 54). A second telephone discovery conference was held on September 9, 2013 (Minute sheet, Doc. 56; Transcript of conference, Doc. 59) resulting in the withdrawal of the September 5, 2013 Memorandum and Order (Doc. 57) and establishment of a new briefing schedule. A document entitled: "Plaintiffs' Supplemental Brief In Support Of Motion to Compel Defendant, Javed Malik, M.D. To Answer Deposition Questions and For Sanctions" was filed by the Plaintiff on September 16, 2013 (Doc. 58). Document 58 was incorrectly docketed as a "Supplemental Motion to Compel Discovery with attached Brief" rather than being docketed as the Supplemental Brief that is was. No formal motion regarding this discovery dispute has been filed. The docket is further complicated by the filing, on September 24, 2013 (Doc. 66), of the same document by the Plaintiff – this time with a copy of the transcript of Dr. Malik's deposition attached as an exhibit (Doc. 66-1). A Reply Brief was filed by Dr. Malik on October 11, 2013 (Doc. 71).

From September 24, 2013 to January 24, 2014 a series of filings (Docs. 67-69 & 73-79) involving requests for extension of time resulted in the establishment of a new set of case management deadlines (Doc. 80).

The discovery dispute arising during the deposition of Dr. Malik remains unresolved (Docs. 41, 42, 52, 58, 66, & 71).

### C. The Discovery Dispute

Plaintiff contends that Dr. Malik should be required to answer deposition questions about the procedures he used and the opinions he reached.  Plaintiff contends that he should answer those questions while being shown the X-rays and CAT scans of Mrs. Petrancosta from the day of the crash.  During the deposition Dr. Malik's lawyer objected to the questions (Doc. 66-1) and instructed his client not to answer multiple times.

In order to better understand the dispute a review of the deposition transcript is needed.  The disputed portion of the deposition begins on page 54 of the transcript.  Plaintiff's counsel, Ms. Blanco, initially asked Dr. Malik to count the number of vertebrae he could see on the CT scan. (Doc. 66-1, p. 54:3-11).  As Dr. Malik proceeded to identify vertebrae, his counsel, Mr. Doherty, stated:

Mr. Doherty: "You know I'm not going to let you go too far in this film. The counting's okay." (Id., p. 54:24-55:7).  Plaintiff's counsel then inquired whether Dr. Malik considered the spaces between vertebrae to be normal, at which point Dr. Malik's counsel objected. (Id., p. 55:9-12).

MR. DOHERTY: Objection. Instruct him not to answer.

MS. BLANCO: Why?

MR. DOHERTY: Because he's not going to be an expert for himself. . . . So he's not going to give any opinion on what he sees today based on what it may have been back in April 2010. So –

MS. BLANCO: You're not going to let him read this film?

MR. DOHERTY: That's correct.

MS. BLANCO: All right. Well, then you're going to have to object to every question I ask.

MR. DOHERTY: Okay. . . . I'll give you a standing – you know –

MS. BLANCO: No. Object every time.

(Id., p. 55:12-56:11).

MS. BLANCO: Okay. On the other side of the spine on the right-hand side, what are those bony things?

MR. DOHERTY: Objection. Instruct him not to answer.

MS. BLANCO: You're not going to let him tell me what they are?

MR. DOHERTY: Nope.

(Id., p. 56:17-24)

Dr. Malik's counsel then instructed his client not to answer the following three questions subsequently asked by Plaintiff's counsel: whether he could see any facet joints on the film; whether he could see the spinal cord on the film; and whether he sees any problems with the C6 vertebra on the film.  (Id., p. 57:4-17). Plaintiff's counsel next asked several questions without objection when the following exchange took place:

MR. DOHERTY: Doctor, I don't want you to make any reference to the film.

MS. BLANCO: No, I'm making – I'm making –

MR. DOHERTY: Please ask a general question

MS. BLANCO: I'm asking a general question.

(Id., p. 58: 23-59:5).

Plaintiff's counsel resumed posing general questions. Dr. Malik's counsel did not object until the following line of questioning:

MS. BLANCO: Okay. Do you see artifact on this film?

MR. DOHERTY: Objection. Instruct you not to answer, Doctor. Well, instruct you not to answer.

MS. BLANCO: Can we go off the record for a second?

MR. DOHERTY: Uh-huh.

MS. BLANCO: And, Bill, can you turn the camera off?

VIDEOGRAPHER: One second, please. 11:54 we're off.

(Discussion held off the video record.)

MS. BLANCO: I just want to preserve –

MR. DOHERTY: Absolutely.

MS. BLANCO: - my position that when I file my motion, it's going to include all the images that I wanted him to look at today.

MR. DOHERTY: And I said that – I made that offer to you, and you said, no, make the objection to every question.

MS. BLANCO: Well, I wanted to do it that way because that standing objection, I didn't know what it was going to apply to. Okay?

MR. DOHERTY: Sure. But you have – you're preserved on any film that you want to use.

MS. BLANCO: Okay. All right. We're done then. We can go back on.

VIDEOGRAPHER: One second, please. 11:56, we're back on.

MS. BLANCO: I have no further questions.

MR. STEVENS: No questions.

MR. BARRETT: No questions.

MR. DOHERTY: Thank you, Doctor.

VIDEOGRAPHER: One second, please. And the current time is 11:56 am. This concludes the deposition.

(Deposition concluded at 11:56 a.m.)  (Id., p. 62:25-64:15).

## II.    LEGAL STANDARD

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding the scope of permissible discovery is committed to the sound discretion of the district court. *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. *See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.,* 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." *Saldi v. Paul Revere Life Ins. Co.,* 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing *Scott Paper Co. v. United States,* 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." *Kresefky v. Panasonic Commc'ns and Sys. Co.,* 169 F.R.D. 54, 64 (D.N.J.1996); see also *Hasbrouck v. BankAmerica Hous. Servs.,* 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); *EEOC v. Mr. Gold, Inc.,* 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse

of discretion). *Halsey v. Pfeiffer*, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010). *See also*, *Rhines v. U.S.,* 2014 WL 3829002 (M.D.Pa. 2014); *Angle v. Miurn* et. al., 2013 WL 5888272 (W.D. Pa 2013); *Huertas v. Beard,* 2012 WL 3096430 (W.D.Pa 2012); *Breslin v. Dickinson Tp.,*2011 WL 3292924 (M.D.Pa. 2011).

## III.   SCOPE OF DISCOVERY OF EXPERT OPINION TESTIMONY GIVEN BY ADVERSE PARTY-DEPONENT

### A.  Applicable Law

The Federal Rules of Civil Procedure govern procedure in the United States district courts. Fed. R. Civ. P. 1.  In a diversity action where state law supplies the rule of decision, a valid federal rule of procedure is controlling in the absence of a conflicting state procedure. *Hanna v. Plumer*, 380 U.S. 460, 464-66 (1965). Similarly, the Federal Rules of Evidence apply to proceedings in federal courts. Fed. R. Evid. 101, 1101; *see also Kelly v. Crown Equipment Co.*, 970 F.2d 1273, 1277 (3d Cir. 1992) (concluding relevance provisions in the Federal Rules of Evidence is arguably procedural and therefore governs in diversity action notwithstanding contrary Pennsylvania law).  In diversity cases for which state law supplies the rule of decision, however, privilege is governed by state law. Fed. R. Evid. 501.

Here, the dispute concerns the permissible scope of discovery and expert testimony. There is a valid Federal Rule of Procedure on point that covers the scope of discovery. *See* Fed. R. Civ. P. 26.  Accordingly, FRCP 26 controls the

permissible scope of discovery and *Erie*[1] is not implicated. As discussed below, however, the scope of discovery is limited by concepts of relevance, privilege, and admissibility.  The instant case is a diversity action raising a state law negligence claim. Pennsylvania law governs privileges.  Relevance and admissibility, on the other hand, are determined by the Federal Rules of Evidence.

## B.  Scope of Discovery

A party is entitled to discovery of nonprivileged matters that are relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Admissibility is not required provided that the information is relevant, nonprivileged, and the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  Id. Evidence is relevant if it has any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence. Fed. R. Evid. 401.  Relevant information is admissible unless federal law provides otherwise. Fed. R. Evid. 402.

### 1.      Relevance

Plaintiff alleges that Dr. Malik, the Defendant, negligently misread certain CT scans and thereby failed to properly diagnose vertebrae fractures.  During the deposition, Plaintiff's counsel asked Dr. Malik to review and interpret the CT scans, and sought to elicit his present medical opinion based upon that review and

---

[1] *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

an explanation of the reason for any change from his original opinion. Although the initial objection was premised on competency, Defendant subsequently argued that this line of questioning was not relevant and therefore not within the scope of discovery.

Specifically, Defendant argues that "it is impossible for such information to be relevant since the only factors which a jury can consider are the evaluations, opinions, and beliefs of Dr. Malik at the time in which he was providing medical care to the Plaintiff. . . ." (Doc. 52, p. 3). Defendant urges that a current medical opinion is "[n]ot only . . . irrelevant as it does not provide any insight as to Dr. Malik's mindset . . . in April 2010 but also is impossible since Dr. Malik presently has far more knowledge and understanding of this case . . . today as compared to when he interpreted [Plaintiff's] films" in April 2010. (Id., p. 6-7).

Plaintiff responds that the answers to the proposed questioning will "narrow and define Plaintiffs' ultimate theory of liability and Dr. Malik's defense." (Doc. 66, p. 20). If Dr. Malik testifies that he currently observes fractures, for instance, then their "existence . . . would no longer be an issue at trial." (Doc. 66, p. 40). Further, Plaintiff contends that "current opinions can and routinely do produce admissions as well as relevant and admissible evidence." (Doc. 66, p. 37). For instance, an inability to explain why Dr. Malik did not initially see the fractures or "an admission that he . . . mistook them for something else" is probative of

negligence.  (Doc. 66, p. 40).  Plaintiff thus argues that "present day opinions are relevant to the issues in the case and thus must be divulged." (Doc. 58, p. 24).

Since Dr. Malik was instructed by counsel not to answer the questions, it is impossible to know (i) whether the doctor's present opinion is different from the original opinion, and (ii) if so, the reason for the change.  Nevertheless, regardless of the content of the response, the information sought is relevant because it goes to duty and breach.[2]  A change of opinion, for example, may be probative of the degree of care initially exercised by Dr. Malik, as would be the explanation for any such change. For instance, if Dr. Malik changed his opinion only as a result of extensive post injury review that far exceeded the applicable standard of care, this would be evidence of conformity to legal duty.  By contrast, if Dr. Malik changed his opinion because he mistakenly concluded the fracture was an "artifact," such an admission is probative of negligence.  If, as Defendant suggests, Dr. Malik presently has far more knowledge of the case due to the subsequent medical outcome and instant litigation, then it would be for the jury to determine whether Dr. Malik's current knowledge indicates mere hindsight bias or instead raises an inference of inadequate knowledge at the time the CT scans were initially

---

[2] Even if the responses turned out not to be relevant, the questions posed were within the scope of discovery. *See Broadway Realty v. Lowes*, 21 FRD 347 (S.D.N.Y. 1958) ("Even if it were determined, after inquiry, that such evidence was not relevant on these matters, such a determination could scarcely be made prior to inquiry merely on the plaintiffs' assurances that it would not be relevant. Defendants are entitled to determine whether such evidence is relevant or not—in other words, to discover whether admissible evidence exists.").

reviewed.  In sum, the reason underlying any change in opinion or lack thereof is relevant because it goes to negligence.[3]

### 2.    Privilege

Defendant has made no claim of privilege that would entitle Dr. Malik to withhold his current opinion.  Nor does Pennsylvania law recognize any privilege applicable to the instant case. *See generally* 1 West's Pa. Prac., Evidence §§ 521-53 (4th ed.)

### 3.    Admissibility

Defendant argues that Dr. Malik's current opinion, retrospective interpretation, or present day review of the CT scans is not reasonably calculated to lead to the discovery of admissible evidence because such information requires expert testimony and Dr. Malik will not be offered as an expert at trial.  (Doc. 52, p. 5).  According to Defendant, "any opinions [Dr. Malik] would offer in response to Plaintiff's proposed line of questioning regarding his present day review of the . . . CAT scan would be inadmissible at trial." (Id.).  Plaintiff argues that Dr. Malik's current opinion is discoverable regardless of admissibility at trial because it deals with the subject matter of the dispute and thus may constitute party admissions or function to narrow the issues for trial  (Doc. 58, p. 24).

---

[3] The proposed questioning is also relevant (though not necessarily admissible) for a more straightforward reason. Dr. Malik's current expert opinion, and the reasons for the change in opinion, goes to the standard of care.

The information sought is relevant and non-privileged.  Therefore, the testimony need only be reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b).   Even if the "expert" portions of the testimony, such as Dr. Malik's current medical opinion, are not admissible at trial, it may still be sought in discovery if such information is reasonably calculated to lead to the discovery of admissible evidence.  *See Falk v. United States*, 53 F.R.D. 113 (D. Conn. 1971) (ordering government official to answer deposition questions calling for opinion testimony despite statutory inadmissibility of the opinion since such information could be used by parties to prepare for trial).  Accordingly, there is no basis for Defendant's contention that inadmissibility at trial means that Dr. Malik's current opinion is not reasonably calculated to lead to the discovery of other admissible information.  For instance, Dr. Malik's current opinion as to, say, the artifacts could reasonably lead to the discovery of admissible information regarding artifacts from other sources.[4]

Further, as Plaintiff points out, Dr. Malik's response would likely narrow the issues for trial. *See Broadway Realty v Lowes*, 21 F.R.D. 347 (S.D.N.Y. 1958) (noting that questioning adverse party witness as to his expert opinion on business matters in antitrust action "may well serve a useful function in narrowing the issues, limiting the subjects of controversy and avoiding unnecessary testimony at

---

[4] See Advisory Committee Notes to Fed.R.Civ.P. 26 (1946 & 2000 amendments).

trial."). For example, if Dr. Malik presently agrees that he observes fractures then their existence would no longer be in issue. On the other hand, if Dr. Malik asserts that his opinion is unchanged and that he currently does not observe any fractures, then Plaintiff's theory of liability and Defendant's defenses would adjust accordingly.

## IV.   DISCUSSION

Following the deposition each party submitted letters to the Court seeking relief (Docs 41 & 42).   These were followed by conferences and additional submissions. The court must decide if the disputed questions were proper, and if the instructions not to answer were appropriate. The third issue to be decided is what remedy, if any, to apply.

### A. Were the disputed questions proper?

Dr. Malik cites to *Jistarri v. Nappi*, 549 A.2d 210 (Pa. Super. 1998) for the proposition that a defendant physician can refrain from answering expert questions (Doc. 42,  p.2). Plaintiff correctly points out that Defendant misreads that opinion (Doc. 66, pp. 31-32).   In *Jistarri*, the court held that a defendant physician may not be required to give expert testimony on the <u>negligence of other defendants</u> at trial. *Jistarri, supra*, 549 A.2d at 218 (emphasis added). The court also expressly stated that the issue before it was not what could be discovered, saying:  "The issue

before us, however, is <u>not what can be discovered</u>, but what can be admitted into evidence at trial.  . . . Therefore, <u>the fact that [the doctor]</u> <u>could not refuse to give</u> <u>an expert opinion in the course of his deposition</u> does not mean that the portions of his deposition in which expert opinions are expressed must be admitted into evidence." *Id.* at 218 (emphasis added).   Moreover, Judge Wieand, in his concurring and dissenting opinion would have allowed the deposition testimony to be read at the trial.  Judge Wieand cites courts from twelve other states for the proposition that a plaintiff may question a defendant physician regarding matters which require the expression of medical opinion. *Id.* at 220.

Dr. Malik's reliance on *Katz v. St. Mary Hospital*, 816 A.2d 1125 (Pa. Super 2003) is likewise misplaced.  In *Katz* the issue was whether a physician defendant could testify and give his medical opinion without first disclosing himself as an expert witness.  The trial court allowed the defendant doctor to give his "medical opinion" and the Superior Court found no error.  The court's opinion does not disclose what the doctor's testimony was; only that he was allowed to give his "medical opinions."  Further separating *Katz* from the instant case is the fact that *Katz* turned on the issue of whether the patient gave informed consent for the surgery, not the quality of medical treatment received.

Dr. Malik also relies on a Lycoming County case decided by the learned Judge Richard Gray, *Myers v. Carey*, Lycoming Co Docket No. 11-01,166

(decided October 22, 2012, unreported, attached as Doc. 52, Ex A, pp 10-17).  In that case plaintiff Myers alleged that Dr. Carey was negligent in diagnosing and treating a tumor in Myer's lung.  Dr. Carey is an orthopedic surgeon.  During his deposition Carey was asked if he had gone back and reviewed old X-rays of Myer's and, if so, what he now sees on it. (*Myers*, Doc. 52, p. 12).  During the deposition Dr. Carey's lawyer indicated that Dr. Carey was not going to testify as an expert in his own defense at the trial.  Relying on two "instructive" cases, *Jistarri v. Nappi* and *Dolan v. Fissell*, Judge Gray ruled that Dr. Carey would not be required to give his current opinion of the X-rays (*Myers*, Doc. 52, pp.15-16) if he stipulated that he was not going to be an expert at the trial.

As discussed above, this court does not believe that *Jistarri* applies to the current dispute.  *Dolan* is likewise not helpful here because it involved the loyalty of an independent expert, not the testimony of a party defendant.  In *Dolan*, a doctor who performed an independent medical exam of a plaintiff for the defense was allowed to testify for the plaintiff in a personal injury suit.  Although the defendant initially retained the doctor, that doctor was not contractually bound to refuse to testify for the plaintiff.  Counsel for the plaintiff did not have any discussion with doctor about any possible expert-client communication so the testimony was allowed.  *Dolan v. Fissell*, 973 A.2d 1009 (Pa. Super. 2009).

**B. What is the proper procedure for not answering questions during depositions?**

Fed. R. Civ. P. 30 governs depositions.  The rule contemplates three

circumstances when a deponent may be properly instructed not to answer:

(1) to preserve a privilege;

(2) to enforce a limitation ordered by the court; or

(3) to present a motion to the court.

The rule states in relevant part:

Objections. **An objection at the time of the examination**--whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition--**must be noted on the record**, **but the examination still proceeds**; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. **A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).** (emphasis added). Fed. R. Civ. P. 30(c)(2).

Attempts to limit the conduct of the deposition are governed by Rule

30(d)(3)(A) which allows only two grounds to limit or terminate a deposition:

(1) the deposition is being conducted in bad faith; or

(2) the deposition is being conducted in a manner that unreasonably annoys,

embarrasses, or oppresses the deponent or party.

The rule states in relevant part:

***Motion to Terminate or Limit.***

**(A)** *Grounds.* At any time **during a deposition**, the deponent or a **party may move to terminate or limit** it **on the ground** that it is **being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party**. The motion may be filed in the court where the action is pending or the deposition is being taken. **If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.**

**(B)** *Order.* The court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c). If terminated, the deposition may be resumed only by order of the court where the action is pending.

**(C)** *Award of Expenses.* Rule 37(a)(5) applies to the award of expenses. Fed. R. Civ. P. 30(d)(3)

The Middle District Local Rules do not have a Rule 30(d)(3) equivalent.

The local rules do however contain a provision requiring a meet and confer

requirement to resolve redaction of objections from depositions to be used at trial.[5]

This rule suggests that the better practice is to allow the deposition to proceed and

deal with the objections before trial.

Judge Caputo entered a Case Management Order (Doc. 23) on August 13,

2012, to guide the parties as this case progressed. The CMO states in relevant part:

---

[5] **LR 30.10 Depositions, Certificate of Conference to Remove Objections.**
If an oral or videotape deposition is to be used at trial, counsel for the party who intends to introduce such deposition shall file a certificate with the court at the final pretrial conference stipulating that the attorney has conferred with counsel for the opposing party in an effort to eliminate irrelevancies, side comments, resolved objections, and other matters not necessary for consideration by the trier of fact. It shall be the duty of counsel to make good faith efforts to remove such portions of such depositions prior to trial. If a videotape transcript is not available, counsel shall preview the videotape in order to comply with this rule. If the court finds that any counsel failed in good faith to seek to remove such portions, the court may make such order as is just, including an order that the entire deposition be read against a party, or that the entire deposition be excluded.

7.  No discovery motions shall be filed until after the disputing parties have conferred with the court in an effort to resolve the discovery dispute.  The discovery conference with the court may be conducted by telephone at the request of any of the disputing parties.

According to the transcript at the beginning of Dr. Malik's deposition it was "… stipulated by and between counsel for the respective parties that all objections, except as to the form of the question, are reserved until the time of trial." (Doc. 66-1, p.3).  Despite this stipulation objections were made.  The parties did not attempt to contact the court during the deposition but chose instead to end the deposition and contact the court via letter (Docs. 41, 42).  At the end of the deposition, counsel discuss the application of a "standing" objection and appear to agree that the objections are preserved (Doc. 66-1, p. 18).

## C. What is the appropriate remedy?

Federal Rules 30(d)(2), 30(d)(3)(B) & (C), and 37(a)(5) guide the court in determining the appropriate remedy.   Counsel for Dr. Malik appears to have acted in good faith, believing that he could properly instruct his client not to answer. This court respectfully disagrees.  The objections and improper delay require a second deposition.  The court reporter and videographer will likely charge an additional appearance fee.  That fee is properly charged to the party who forced it to be incurred.

## V.     CONCLUSION

Based upon my review of the transcript, the submissions of the parties, and applicable legal authorities, I conclude that counsel for Dr. Malik improperly instructed his client not to answer the questions presented.  Plaintiff should be allowed to re-depose Dr. Malik and ask him questions about what he observed back in 2010 as well as what he sees on the films when he is deposed.  He may be asked questions about how he interpreted the films in 2010 and how he interprets them today.  He can be asked to explain any differences.  Counsel for Dr. Malik may object, but should not instruct his client not to answer.  Disputes over the admissibility of his answers at trial should be resolved using L.R. 30.10.

In this decision the court intentionally does not reach the question of the admissibility of his deposition answers at trial.

An appropriate order follows.  The parties are reminded that pursuant to Fed. R. Civ. P. 72(a) and L.R. 72.2 they may serve and file objections to this order within 14 days.

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LINDA PETRANCOSTA**, *et. al.*, | : | |
| | : | |
| **Plaintiffs** | : | **Case No.  3:12 – CV – 00677** |
| | : | |
| **v.** | : | **(Judge Brann)** |
| | : | **(Magistrate Judge Arbuckle)** |
| | : | |
| | : | |
| **JAVID I. MALIK,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

### ORDER

1.  Plaintiff will be allowed to re-depose Dr. Malik within the next 30 days.

2.  Defendant will pay the cost of the second appearance fees for the videographer and court reporter (if any).  For now each party will bear their own costs of the second deposition.  A decision on any additional remedy is reserved until the conclusion of the case.

3.  If the court's delay in resolving this issue has hurt the parties ability to get this case ready for trial with the current deadlines the parties are invited to submit an agreed revised schedule for the Court's approval.

**SO ORDERED.**

_s/ William I. Arbuckle, III_
William I. Arbuckle, III
U.S. Magistrate Judge

Dated:   August 19, 2014